Dennis Bell
2934 Benton Road
Paducah, Ky 42003
(270) 556-1571

'08 OCT -3 A10:44

FILED
US DISTRICT COURT CLERK
WESTERN DIST KENT

Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

DENNIS BELL,

5 : '08 C V - 0167 R

        Plaintiff,

CASE NO._____

   v.

**COMPLAINT**
**(JURY TRIAL REQUESTED)**

COUNTRYWIDE HOME LOANS, INC., ANDREW
BESHEAR, JONATHON D. PITCHFORD, AMERICA'S
WHOLESALE LENDER, INC., aka AMERICA'S
WHOLESALE LENDER, MORTGAGE ELECTRONIC
REGISTRATION SERVICES, INC., and
DOES 1 TO 20.

        Defendants
_____/
_____

**COMES NOW**, Plaintiff, Dennis Bell, and would show unto the Court the following:

*Parties*

1.     Plaintiff is a resident of McCracken County Kentucky, residing at 2934 Benton Road, Paducah, Ky., 42003.

2.     Defendant Countrywide Home Loans, Inc. ( hereinafter "CHL") is a New York Corporation with its principal offices located in Calabasas, California, and registered to do business in Kentucky as a foreign corporation. It is also registered in the State of Kentucky as an Assumed Name Corporation using the name and style of America's Wholesale Lender with a principal office at 155 No. Lake Ave.,

1

1  Pasadena, Ca. 91101. Such assumed name is not to be confused with the defendant identified in
2  paragraph 5 herein. The registered agent for Countrywide Home Loans, Inc. in the State of Kentucky is
3  The Prentice Hall Corporation Systems, 421 West Main Street, Frankfort, Ky., 40601.

4  3.      Defendant Andrew Beshear (hereinafter "Beshear") is a resident of the State of Kentucky whose
5  principal business address is 400 West Market Street, Suite 1800, Louisville, Ky., 40202. Beshear is an
6  attorney licensed to practice law in the State of Kentucky and is therefore a judicial officer in his
7  capacity as attorney, which is an officer of the court, as provided by Kentucky State regulation.

8  4.      Defendant Jonathon Duncan Pitchford , (hereinafter "Pitchford") is a resident of the State of
9  Kentucky whose principal business address is 300 Broadway, Paducah, Ky., 42002. Pitchford is an
10 attorney licensed to practice law in the State of Kentucky and is therefore a judicial officer in his
11 capacity as attorney, which is an officer of the court,  as provided by Kentucky State regulation.

12 5.      Defendant America's Wholesale Lender, Inc.(hereinafter "AWL") claims to be a New York
13 Corporation with its principal address located at P.O. Box 660694, Dallas, TX., 75266-0694.

14 6.      Defendant, Mortgage Electronic Registration Systems, Inc., (hereinafter "MERS") is a Delaware
15 corporation with its principal address located at P.O. Box 2026, Flint, MI., 48501-2026. MERS in not
16 registered or authorized to conduct business in the State of Kentucky.

17                                          *Jurisdiction*

18 7.      There is complete diversity of jurisdiction between the plaintiff and all defendants in this action,
19 and the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000) The real
20 property in question is located in this jurisdiction, consequently this Court has subject matter jurisdiction
21 and jurisdiction over the parties.

22                                       *Factual Allegations*

23 8.      During 2004 Plaintiff executed 3 mortgages with America's Wholesale Lender, the defendant
24 identified in paragraph 5 above. On February 2, 2004 Plaintiff executed a mortgage in the amount of
25 $37,000 secured by real property located at 2914½ Benton Road, Paducah, Ky. On February 24, 2004
26 Plaintiff executed a mortgage in the amount of $35,000 secured by real property located at 2115 Park
27 Ave., Paducah, Ky. On May 11, 2004 Plaintiff executed a mortgage in the amount of $28,000 secured
28 by real property located at 840 Burkhart Lane, Paducah, Ky.  Upon recording, each of these mortgages

2

1  was duly transferred to MERS.

2  9.      On each of the 3 mortgages stated above, the Lender is identified as Americas Wholesale Lender

3  as identified in paragraph 5 above, and the Mortgagee is identified as Mortgage Electronic Registration

4  Systems, Inc. as identified in paragraph 6 above. None of the other defendants hold or maintain any

5  lawful interest in said mortgages. Plaintiff is informed and believes that CHL was assigned the servicing

6  rights on each of the loans associated with the mortgages identified in ¶8.

7  10.     During the loan processing and/or loan signing of the loans that are secured by the above-stated

8  mortgages the defendants failed to disclose the true terms, conditions and costs of the loans and

9  otherwise failed to comply with the Federal Truth In Lending Act and Kentucky Residential Mortgage

10  Fraud Act.

11  11.     In the case of each loan and mortgage, plaintiff refinanced his real property in an amount that was

12  less than 70% of the appraised value. Because of plaintiff's low loan-to-value ratio loans there was no

13  requirement made by the defendant lender for escrow accounts on plaintiff's loans . Plaintiff requested

14  that such escrow accounts be established solely for his benefit, and not for the lender.

15  12.     During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

16  defendant(s) CHL, AWL and/or MERS forged, altered or falsified certain loan documents on one or

17  more of plaintiff's loans with the intent to defraud and/or deceive the plaintiff.

18  13.     During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

19  defendant(s) CHL, AWL and/or MERS charged fees in excess of the amounts allowed under Federal

20  and Kentucky State Laws.

21  14.     During the origination and processing of plaintiff's loans/mortgages by the defendant(s),

22  defendant(s) CHL, AWL and/or MERS provided plaintiff with false and misleading  information related

23  to the costs and terms of such loans which compromised the plaintiff's rights and interests related to such

24  loans and violated the defendant's obligation to plaintiff of good faith and fair dealing.

25  15.     Subsequent to the closing of plaintiff's loans, one or more of the defendants, and specifically

26  CHL, began servicing such loans, including the plaintiff's escrow accounts.

27  16.     During 2005, defendants, and specifically CHL, began wrongly, fraudulently, recklessly, and/or

28  knowingly, and without authority, began demanding inflated escrow payments that were in excess of the

3

1  amounts actually owed, were in violation of RESPA limits, and which violate the Kentucky Residential

2  Mortgage Fraud Act.

3  17.   On May 6, 2008, at a Senate hearing, Senator Charles Schumer identified Countrywide Home

4  Loans as "fabricating documents  to wring dubious payments" from borrowers, while U.S. Bankruptcy

5  Judge Thomas Agresti, in referring to "Countrywide's fabrication of letters" said, "These letters are a

6  smoking gun that something is not right in the state of Denmark."

7  18.   Defendant CHL is now under investigation by the U.S. Bankruptcy Trustee and the U.S. Attorney

8  for fraud associated with its loan servicing practices, including the bankruptcy case of Diane Hill of

9  Pittsburgh, PA. in which Judge Agresti presides.

10  19.   During 2005 CHL's loan sales peaked at which time it was experiencing a high volume of

11  foreclosures.  Liquidity was rapidly becoming a concern despite the fact that CHL was  continuing to

12  misrepresent its actual financial condition on its annual and quarterly filings to the SEC.

13  20.   Although CHL loan sales decreased from 138B to 126B in the 3rd quarter of 2005, it reported

14  an increase in revenue from its mortgage servicing operations. CHL depended heavily on its mortgage

15  servicing revenue for cash flow to fund its daily operations.

16  21.   To increase its cash flow, and consistent with its report that its mortgage servicing revenue was

17  increasing as its loan volume was decreasing, CHL embarked upon a scheme where it would inflate

18  charges to its borrowers on existing loans and escrow accounts. Routinely, CHL would unlawfully

19  inflate the stated insurance premium or real property tax when it in fact had not actually been increased

20  by the insurance company or county tax assessor.

21  22.   Additionally, CHL would fail to apply a borrowers payment until after the 15th of the month and

22  then charge the borrower a late fee. CHL intentionally and unlawfully used fraudulent tactics to increase

23  a borrowers payments which resulted in an illgotten windfall of pure profit upon which CHL began to

24  rely to meet its increasing operational cash flow demands.

25  23.   During this time, CHL was servicing approximately 198,000,000 loans with a total value of over

26  One Trillion Dollars. Doing the math, if CHL simply added one dollar to each loan it serviced, CHL

27  would be making $198,000,000 per month in pure profit based solely upon fraud.

28

24.     On one single loan, defendant CHL was unlawfully charging the plaintiff over $150 per month in fraudulently inflated charges.

25.     To perpetuate this ongoing fraud against borrowers, including the Plaintiff herein, who resisted this excessive and fraudulent business practice by CHL, CHL would threaten to report negative credit against the borrower if he failed to pay, which posed a more severe problem than the amount being extorted from him at the time.

26.     Plaintiff refused to pay the unlawfully inflated amounts demanded by CHL on his escrow accounts and sent his written demand that CHL cease demanding such improper amounts, and thereafter withdrew his authorization to allow CHL to maintain his escrow accounts associated with his loans.

27.     Although CHL had never imposed any condition of his loans that plaintiff was required to establish escrow accounts, and that such escrow accounts were merely established as an accommodation to plaintiff's request for such accounts, CHL refused to cease demanding payment into such accounts even after plaintiff's written demand for it to do so.

28.     CHL threatened plaintiff with negative credit reporting and foreclosure if he failed to make the inflated payments as demanded by the defendant. Plaintiff refused to pay the unlawfully inflated amounts and after rescinding defendant CHL's authority to collect escrow payments, plaintiff continued to make his principal and interest payments under the terms of the mortgages.

29.     Defendant CHL failed and refused to apply plaintiff's payments in accordance with his instructions and thereafter misapplied such payments for the purpose of imposing late fees and reporting negative credit against the plaintiff.

30.     Thereafter, and by the use of non-genuine documents, defendant CHL filed suit against the plaintiff to foreclose on one of his properties. Within weeks, defendant CHL filed suit to foreclose on two additional properties owned by plaintiff.

31.     On or about May 19, 2006, plaintiff herein obtained a default judgment in the amount of $556,989.75 on his counterclaim against CHL in the McCracken Circuit Court related to CHL's foreclosure suit. A few days later, defendants Andrew Beshear and Jonathon Pitchford filed their appearances in that case as counsel for defendant herein, CHL, who was the plaintiff in the McCracken Circuit Court case.

5

32.    On or about July 20, 2006 Andrew Beshear filed a sworn affidavit in the McCracken Circuit in support of his motion on behalf of CHL to set aside the default judgment in favor of the plaintiff herein. In that affidavit, Beshear stated that "I have had detailed discussions with numerous members of Countrywide" and "Countrywide will be able to produce evidence that defendant (plaintiff herein) missed payments, made late payments, or made insufficient payments under the loan."

33.    After discovery was served upon CHL and Beshear which included a request for production of documents, and specifically the documents identified in Beshear's affidavit, both Beshear and CHL failed to produce the documents that Beshear stated in his sworn affidavit were in CHL's possession. Beshear either perjured himself, or he violated Kentucky Rules of Discovery, and Kentucky Rules of Professional Conduct by failing to produce these documents.

34.    CHL, Beshear and Pitchford have failed to provide responses to discovery in the McCracken Circuit Court case in accordance with Kentucky Rules of Discovery and where such conduct by Beshear and Pitchford has violated Kentucky Rules of Professional Conduct.

35.    On or about November 19, 2007 Beshear and Pitchford requested a 2 week extension of time to answer interrogatories and request for production of documents in the McCracken Circuit Court case. Defendant (plaintiff herein) agreed to such request expecting Beshear and Pitchford to serve the responses of CHL within 2 weeks. After 2 weeks, Beshear and Pitchford failed to serve any responses at all, in violation of Kentucky Rules of Discovery.

36.    Beshear and Pitchford, after more than 6 weeks, served discovery responses that were neither executed or verified. This violated the agreement for a 2 week extension of time to respond, and it violated Kentucky Rules of Discovery as well as Kentucky Rules of Professional Conduct.

37.    During this same time, Beshear and Pitchford were withholding documents they had received from 3rd parties pursuant to subpoenas they had served. Despite a duty to immediately provide such documents to the defendant (plaintiff herein) under KRCP 45.03, Beshear and Pitchford withheld these documents and secreted them from the defendant in that case.

38.    Beshear and Pitchford attempted to force the defendant (plaintiff herein) into a deposition without providing the defendant with copies of documents they had received from the 3rd party subpoenas. Defendant refused to appear for deposition until such documents were provided to him.

39.     Beshear and Pitchford agreed to provide the 3rd party documents before setting the defendant's deposition, but thereafter noticed the defendant's deposition while failing and refusing to provide the 3rd party documents. The defendant sent written notification to Beshear and Pitchford that he would not attend any deposition until the 3rd party documents were provided to him as previously agreed, and provided to him in accordance with KRCP 45.03.

40.     Thereafter, and still refusing to produce the 3rd party documents to the defendant (plaintiff herein) Beshear and Pitchford filed a motion to compel and motion for sanctions against the defendant for his failure to attend a deposition. These motions were filed in bad faith and were filed in violation of the agreement between the defendant and Beshear and Pitchford to provide the 3rd party documents before taking the defendant's deposition.

41.     Beshear and Pitchford have abused and misused the discovery process to delay the McCracken Circuit Court case to hinder and delay the defendant's ability to prosecute his case, and to prejudice his right of due process under the 14th Amendment throughout the case.

42.     Beshear and  Pitchford,  filed a motion in the McCracken Court for sanctions against the defendant (plaintiff herein) which contain materially false statements, intentionally alluded to matters that are not relevant or are likely to be supported by admissible evidence, and which seek to obtain an advantage over the defendant in this case, all in violation of Rules Of Professional Conduct.

43.     In the motion for sanctions, which bears the signatures of both Andrew Beshear and J. Duncan Pitchford, plaintiff (CHL) and its counsel seek sanctions and a dismissal of defendant's (plaintiff herein) counterclaim based upon false allegations that defendant 1)"committed the unauthorized practice of law", 2) "made at least two deliberately untruthful statements", and, 3) that defendant was the subject of a felony criminal conviction in 2001.

44.     These statements made by Beshear and Pitchford are false, they are made with the intent to disgrace the defendant to gain an advantage over him , they show a wanton and reckless disregard for the plaintiff's right of due process, and they violate several Kentucky Rules of Professional Conduct which prohibit such conduct, where such prohibition serves to protect due process.

45.     At the time Beshear and Pitchford made false allegations in their motion for sanctions against the defendant in the McCracken Circuit Court case, the defendant (plaintiff herein) was represented by

Dennis Null. Mr. Null notified Beshear and Pitchford that they had made substantial misrepresentations to the court and those misrepresentations should be eliminated or corrected. Beshear and Pitchford refused to correct their misrepresentations or otherwise advise the court of their falsity. The conduct of Beshear and Pitchford was approved and ratified by CHL. Such conduct violated the plaintiff's due process rights, and it violates Kentucky Rules of Professional Conduct 3.3(a)(1) and (2), and it constitutes fraud.

46.     The judge presiding over the McCracken Circuit Court case was Judge Craig Clymer. Beshear and Pitchford were keeping a secret that substantially prejudiced the rights of the defendant (plaintiff herein) and denied his due process rights in that case. After more than a year-and-a-half, plaintiff herein discovered that Judge Clymer's daughter-in-law was working for the law firm who represents CHL in that case, Whitlow, Roberts & Straub, who is also Pitchford's employer.

47.     While Beshear and Pitchford enjoyed this nefarious relationship with Judge Clymer, and benefitted from the conflict of interest that existed, they both failed to disclose this fact to the defendant in that case  (plaintiff herein). The result was that the defendant's due process rights were completely defeated. While plaintiff's due process rights were compromised, Beshear and Pitchford intended to take advantage thereof and seek a summary adjudication in that case, thus depriving the plaintiff of his property without due process.

48.     Beshear, Pitchford and CHL knowingly, recklessly, wrongly and fraudulently used this conflict of interest and special relationship with Judge Clymer to gain an unfair advantage over the defendant (plaintiff herein) in the McCracken Circuit Court case, to obtain favorable rulings, to defeat the defendant's claims,  to  prevail in the action, all by denying the defendant (plaintiff herein) his due process rights.

49.     In one instance, Beshear and Pitchford filed a motion for sanctions against the defendant (plaintiff herein), and in support thereof, filed a sworn affidavit attesting to the fact that Jonathan Pitchford had performed $1854 in legal services in that case. As a result of the special relationship between Pitchford and Judge Clymer, that motion was granted.

50.     A few weeks later when the defendant (plaintiff herein) discovered that Judge Clymer's daughter worked for Pitchford's law firm, Pitchford attempted to avoid the conflict of issue by stating to the court

8

1   that he had done no work on the case, and had only made and filed copies with the court. Mr. Pitchford

2   made the following statement in open court: "*and just to echo what Mr. Beshear said, my role has been*

3   *very limited...um...aah...essentially filling the role of local counsel in this case...aah...largely printing*

4   *documents and delivering them to the clerk, so in providing real estate when Mr. Beshear needs to take*

5   *a deposition...so **all** the substantive work has come from Mr. Beshear's office.*"

6   51.      Pitchford has committed perjury by filing a false affidavit in court, and then confirmed that

7   perjury when he made his statement in open court that he had done no work in the case. Pitchford and

8   Beshear have committed a fraud upon the McCracken Circuit Court, a fraud upon the defendant

9   (plaintiff herein), and violated the defendant's due process rights as guaranteed by the 14th Amendment.

10   52.      Throughout the McCracken Circuit Court case, Beshear and Pitchford failed to raise any relevant

11   defense to the counterclaim filed by the defendant (plaintiff herein) because their client has no defense

12   to the allegations  therein. Beshear and Pitchford resorted to filing false proceedings against the

13   defendant to support erroneous requests for summary adjudication of the claims made therein by both

14   the plaintiff and defendant. In each motion filed by Beshear and Pitchford, they were relying on their

15   special relationship with Judge Clymer, the conflict of interest that existed, and the defendant's lack of

16   knowledge about such conflict as a means to obtain the relief they sought, all which violate the plaintiff's

17   due process rights in that case.

18   53.      CHL is currently the subject of investigations or legal action by various states and/or their

19   respective Attorneys General, including, California, Washington, Illinois, Florida, West Virginia,

20   Connecticut, New Mexico and Indiana related to unlawful and/or fraudulent business practices.

21   54.      Additionally, CHL, along with many of its affiliates and high ranking officers are under criminal

22   investigation by the FBI, SEC, U.S. Attorney, and U.S. Bankruptcy Trustee for high level fraud

23   including insider trading, securities fraud, and fraudulent and deceptive business practices, forgery and

24   demanding erroneous charges from borrowers, including borrowers in the U.S. Bankruptcy Court.

25   55.      Defendants CHL, Beshear and Pitchford are attempting to deprive the plaintiff of his property

26   by way of flawed and unconstitutional judicial proceedings where such proceedings have been tainted

27   by CHL, Beshear, and Pitchford's use of forged and altered documents, false matters being filed with

28   the McCracken Circuit Court, and a secret and special relationship with the presiding judge who has a

1   family member working for the law firm representing CHL. All such proceedings violate this plaintiff's

2   right to due process in that case.

3   56.     The conduct of Beshear and Pitchford in rendering unlawful and unconstitutional legal services

4   was done wantonly, recklessly, knowingly, and without authority of law, and was designed to deprive

5   the plaintiff his due process rights while allowing CHL to perpetuate its fraud of using forged

6   documents, overcharging the plaintiff, failing to disclose evidentiary matter to expose CHL's fraud, all

7   of which is a violation of the Kentucky Residential Mortgage Fraud Act (KRS 286.8-990), Kentucky

8   Consumer Protection Act (KRS 367.170) and the Sarbanes/Oxley Act which prohibits attorneys from

9   assisting their clients to commit or conceal fraud.

10              **COUNT 1: VIOLATIONS OF THE TRUTH IN LENDING ACT**

11   57.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent

12   paragraphs of the Complaint as if fully set forth herein.

13   58.     The plaintiff's loans evidenced by the mortgages herein are regulated by the federal Truth

14   in Lending Act and the regulations promulgated by the Office of Thrift Supervision thereunder.

15   ("Regulation Z")

16   59.     As discussed above, CHL, AWL, and MERS failed to lawfully disclose, prior to the loan

17   settlement, during the loan settlement, and after the loan settlement, the actual and proper costs of the

18   loans, the true terms of the loans, the proper amount of payments of the loans, and/or to disclose any

19   change of payment that would occur.

20   60.     As a direct result of defendants CHL, AWL and MERS failure to make such lawful

21   disclosures, plaintiff was charged cost and fees that were not disclosed and plaintiff's payments were

22   subsequently increased without lawful disclosure in violation of USC 15 § 1605.

23   61.     As a direct and proximate result of the aforesaid violations of the federal Truth in

24   Lending Act, the plaintiff suffered a significant ascertainable loss of money and/or valuable property,

25   and foreseeable consequential damages (including but not limited to emotional distress, adverse credit

26   report entries, foreclosures, late fees, additional interest expense, inability to pay other bills when due,

27   attorney fees, court costs, and similar and related items), all caused by CHL, AWL and/or MERS, and

28   all amounts to be proven at trial.

62.    As a result of the foregoing, Plaintiff is entitled to and prays for statutory and actual compensatory, consequential, and punitive damages, as well as attorney fees and costs, to the extent allowed by law and in amounts to be proven at trial.

### COUNT 2: KENTUCKY MORTGAGE LOAN PRACTICES VIOLATION

63.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

64.    KRS 286.8-220(2) provides that: It shall be unlawful for any mortgage loan company ...directly or indirectly:

(a) To employ a device, scheme, artifice to defraud;

(b) To engage in any act, practice, or course of business which operates  or would operate as a fraud or deceit upon any person;...

KRS 286.8-125(1) provides that: It shall be unlawful for any licensee or person holding a claim of exemption to originate a loan secured by a mortgage on residential real property in Kentucky if the total net income generated by the licensee or person exceeds two thousand dollars ($2000) or 4% of the total loan amount, whichever is greater.

65.    The acts and practices by CHL, AWL and MERS described herein violate KRS 286.8-220(2) and KRS 286.8-125(1), and caused damage to Plaintiff in an amount to be proven at trial, but which exceed the jurisdictional minimum of the Court.

### COUNT 3: VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

66.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

67.    12 USC §2607 states that:

(a) No person shall give, and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

(b) No person shall give and no person shall accept any portion, split, or % of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually rendered.

68.   12 USC §2609 states that:

(a) A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower...

(2) to deposit in any escrow account in any month beginning with the first full installment payment under the mortgage a sum in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges...

69.   12 USC §2605 states that :

(e)(3) During the 60-day period beginning on the date of a servicer's receipt from any borrower of a qualified request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

(f) Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) In the case of any action by an individual, an amount equal to the sum of

(A) any actual damages to the borrower as a result of the failure.

70.   Defendant CHL, with the support and ratification of AWL and MRES, issued kickbacks on fees charged the Plaintiff on his loans and further overcharged Plaintiff for settlement services which were then split among persons who did not perform such settlement services, in violation of 12 USC § 2607.

71.   Defendant CHL, with the support and ratification of AWL and MRES, charged Plaintiff amounts on his escrow accounts which were in excess of the actual amounts required to pay taxes and insurance premiums in violation of 12USC § 2609.

72.   Defendant CHL, with the support and ratification of AWL and MRES, reported that Plaintiff made late payments on his loans during the 60-day period after Plaintiff submitted a qualified written request to notify Defendant CHL that it had improperly made such an error in reporting, and that CHL had failed to properly credit Plaintiff's payments to his account. Despite the fact that defendant CHL provided Plaintiff with written proof that his payments were in fact not late during the period in question, CHL continued to report Plaintiff's loan payments late during and after the 60-day period.

73.     As a result of the foregoing, Plaintiff is entitled to and prays for statutory and actual compensatory, consequential, and punative damages, as well as attorney fees and costs, to the extent allowed by law and in amounts to be proven at trial.

**COUNT 4: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

74.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

75.     Defendants, and each of them, with respect to Plaintiff's loans, are acting within their capacity as principal, agent, or employee of the mortgagee and/or lender, are acting in concert with one another, are acting for the benefit of one another, are acting with the knowledge and consent of one another, and therefore are liable to the Plaintiff  for any and all acts or conduct  taken by such defendants, whether jointly or individually.

76.     Defendants, and each of them, are debt collectors under the federal Fair Debt Collection Practices Act as defined by 15 USC § 1692a (6). The Lender under Plaintiff's mortgages is AWL, however it is using a name other than its own, CHL, Lerner, Sampson & Rothfuss, Stites & Harbison, PLC and Whitlow, Roberts & Straub, which would indicate that a third person is collecting or attempting to collect the debt of the Plaintiff. Defendant's own pleadings in the McCracken Circuit Court case indicate they are debt collectors.

77.     The amounts demanded by the defendants include sums that are prohibited under 12 USC § 2609, 12 USC  §2605, and such amounts exclude payments that were made by the Plaintiff but not credited by the defendant. Further, such amounts include late fees and other charges that are solely the result of the defendants' fraud and negligence and which are not owed by the Plaintiff nor lawfully owed to the defendants.

78.     The defendants, and each of them, as debt collectors, have presented forged and altered documents to the Plaintiff in an effort to force the Plaintiff to pay sums he does not owe, which is  in violation of 15 USC § 1692e.

79.     The defendants, and each of them, as debt collectors, have failed and refused to provide actual copies of documents to support the amount such debt collector defendants are attempting to collect from the Plaintiff despite Plaintiff's request for such documents. Such conduct on the part of the

1  defendant debt collectors violated 15 USC § 1691g (b).

2      80.    Defendants Beshear and Pitchford, with the support and consent of CHL, AWL and
3  MERS, made the false representation, and in conjunction with their collection attempts against the
4  Plaintiff, that Plaintiff was convicted of a felony in Missouri in 2001, and that such felony was relevent
5  to the debt that the defendants, and each of them, are attempting to collect against the Plaintiff.

6      81.    When Beshear and Pitchford made this false statement, they knew it was false, but they
7  made such false statement in order to disgrace the Plaintiff for the purpose of defaming him and
8  damaging his reputation. Beshear and Pitchford were advised in writing by both the Plaintiff, and
9  attorney Dennis Null, that Plaintiff was never convicted of any crime in Missouri as falsely stated by
10 Beshear and Pitchford. Beshear and Pitchford were also requested to retract their false statement, but
11 they refused. The conduct of Beshear and Pitchford as described herein is a strict violation of 15 USC
12 § 1692e(7). The defendants and each of them, are subject to civil liability to the Plaintiff under 15 USC
13 § 1692k and other state and federal laws.

14     82.    As a result of the aforesaid violations of the federal Fair Debt Collection Practices Act,
15 the Plaintiff is entitled to recover and prays for the recovery of actual and statutory compensatory
16 damages, and consequential and punitive damages, and reasonable attorney fees, to the maximum
17 allowed by law.

18 **COUNT 5: VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**

19     83.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent
20 paragraphs of the Complaint as if fully set forth herein.

21     84.    KRS 367.170(1) provides that "Unfair, false, misleading or deceptive acts or practices
22 in the conduct of any trade or commerce are hereby declared unlawful."

23     85.    The acts and practices by CHL, AWL, MERS, Beshear and Pitchford, set out herein, are
24 in violation of KRS 367.170(1), and caused damage to Plaintiff in an amount to be proven at trial, but
25 which exceeds the jurisdictional minimum of the Court.

26 **COUNT 6: FRAUD AND CONVERSION**

27     86.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent
28 paragraphs of the Complaint as if fully set forth herein.

14

87.   Plaintiff was approved for 3 loans by defendants CHL, AWL and MERS (hereinafter Lender Defendants) which are evidenced by the three mortgages herein.

88.   After loan approval, but prior to loan settlement, Plaintiff requested that his loans include escrow accounts solely for his benefit. Never at any time did the Lender Defendants suggest or require that Plaintiff's loans were subject to, or contingent upon escrow accounts.

89.   Plaintiff is informed and believes that he never executed any document which required or authorized the Lender Defendants to impose or otherwise establish escrow accounts for his loans.

90.   As requested by Plaintiff, lender defendants began collecting sums from his monthly payments that Plaintiff believed were for the purpose of paying the exact amount of insurance premiums and real property taxes related to Plaintiff's loans and properties.

92.   Lender Defendants thereafter began inflating charges to Plaintiff's escrow accounts by falsely representing to Plaintiff that his insurance premiums and/or real property taxes were more than their actual and legitimate amounts.

93.   Lender Defendants also mismanaged Plaintiff's escrow accounts by making improper or duplicative disbursements which gave the appearance of escrow account shortages for which Plaintiff was improperly billed.

94.   After making improper disbursements, and improperly inflating Plaintiff's escrow accounts, Lender Defendants then began billing Plaintiff for amounts that were not actually owed.

95.   As Plaintiff continued to make his monthly payments as agreed, Lender Defendants would then convert those payments and apply such sums to late fees and erroneous charges that the Lender Defendants declared were due.

96.   Plaintiff informed the lender defendants that they had made errors on Plaintiff's escrow accounts and requested that they correct such errors and restore his escrow accounts to their proper status.

97.   After the Lender Defendants failed and refused to make such corrections to Plaintiff's escrow accounts, Plaintiff sent written notice to lender defendants that he had withdrawn his authorization to allow the lender defendants to manage, maintain or collect sums for escrow accounts related to his loans.

15

98.   The Lender Defendants ignored Plaintiff's written demand and as the lender defendants collected and received the Plaintiff's monthly payments that were directed to his loans for PITI, the Lender Defendants converted those payments for their own purposes and applied them to erroneous late fees and other charges that were not legitimate sums owed by Plaintiff.

99.   Lender Defendants continued to misapply and convert Plaintiff's monthly loan payments while simultaneously showing that Plaintiff's loans were in default as a result of lender defendants' fraud and conversion of Plaintiff's payments.

100.   Lender Defendants then initiated foreclosure lawsuits against Plaintiff's properties alleging that Plaintiff was in default on his loans, but the reality is that the alleged defaults are a result of Lender Defendants's fraud and conversion of Plaintiffs loan payments, Lender Defendants failure to properly and lawfully apply Plaintiff's loan payments, and Lender Defendants inclusion of unlawfully and fraudulently inflated escrow charges and late fees to the amount of the default alleged of plaintiff.

101.   12 USC §2609 states that:

(a)  A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower...

(2)  to deposit in any escrow account in any month beginning with the first full installment payment under the mortgage a sum in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges... Lender defendants violated this federal code when they, and each of them, forced and/or demanded that Plaintiff pay sums in excess of the limits set forth herein.

102.   KRS 286.8-130 provides that (1) all sums paid into an escrow account by the borrower shall be placed into an interest-bearing account and shall belong to the borrower and not the lender, (2) all interest paid on such escrow funds shall belong to the borrower, (3) the lender shall account to any borrower whose property secured the loan such funds are held for, (5) Escrow funds shall not be subject to execution or attachment on any claim of the lender and it shall be unlawful for the lender to knowingly to keep any such escrow funds, and, (6) Payments to the debtor's escrow account shall be properly credited. Defendants never paid interest to Plaintiff on his escrow deposits.

103.   KRS 286.8-220(2) provides that: It shall be unlawful for any mortgage loan company ...directly or indirectly:

(a) To employ a device, scheme, artifice to defraud;

(b) To engage in any act, practice, or course of business which operates  or would operate as a fraud or deceit upon any person;...

104.   As alleged herein, the lender defendants have violated KRS 286.8-130(1), (2), (3), (5) and (6).

105.   As a result of the aforesaid violations of 12 USC §2609 and KRS 286.8-130(1), (2), (3), (5) and (6), and KRS 286.8-220(2), the Plaintiff is entitled to recover and prays for the recovery of actual and statutory compensatory damages, and consequential and punitive damages, and reasonable attorney fees, to the maximum allowed by law.

**COUNT 7: FRAUD AND CONSPIRACY**

105.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

106.   Defendants, and each of them, have initiated and maintained legal action against the plaintiff to foreclose the mortgages herein, which are identified in ¶8 above.

107.   In each foreclosure suit as described herein, the plaintiff in those cases (CHL) holds no actual interest in the mortgages, has no legal capacity to maintain those foreclosure proceedings,  and is therefore committing fraud against the plaintiff herein by maintaining those actions.

108.   Additionally, the defendants, and each of them, are using altered , fabricated, or non-genuine documents as evidence to support the foreclosure proceedings against the plaintiff herein knowing that such documents are not the original or genuine documents, and knowing that use of such documents are a fraud upon the court and a fraud upon the plaintiff.

109.   Defendants, and each of them, continue to maintain the foreclosure proceedings against the plaintiff and his mortgages with full knowledge that the loans related to such mortgages were made in violation of the federal Truth in Lending Act, the federal Real Estate Settlement Procedures Act, and the federal Fair Debt Collection Act, all of which constitute a fraud upon the Plaintiff.

110.     The Defendants, and each of them, in concert with one another, have willfully attempted to deprive the plaintiff of his property and money for their own benefit by initiating and maintaining foreclosure lawsuits against him, with the full knowledge that such Defendants were committing fraud as alleged herein.

111.     KRS 286.8-220(10 states: it shall be unlawful for any mortgage loan company ...directly or indirectly:

(a) To employ a device, scheme, artifice to defraud;

(b) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;...

112.     The foreclosure lawsuits initiated and maintained by the defendants, and each of them, constitute a device or scheme as defined by KRS 286.8-220(1)(a), and such suits constitute an act, practice and course of business in which the defendants have engaged themselves in for the purpose of defrauding the Plaintiff and wrongfully depriving him of his property and money.

113.     As a result of the foregoing, Plaintiff is entitled to and prays for compensatory, consequential, and punitive damages, in amounts to be proven at trial.

## COUNT 8:  BAD FAITH, INTERFERENCE WITH THE PERFORMANCE OF A CONTRACT,  AND BREACH OF THE COVENANT OF FAIR DEALING

114.     Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

115.     KRS 286.8-270 provides that:

(1) A mortgage loan broker shall comply with the following duties:

(a) A mortgage loan broker shall exercise good faith and fair dealing, shall act in the best interest of the borrower, and shall not compromise a borrower's right or interest in favor of another's right or interest;

(b) A mortgage loan broker shall disclose to borrowers all material facts of which the mortgage loan broker has knowledge that might reasonably affect the borrower's rights, interests, or ability to receive the borrower's intended benefit from the residential mortgage loan.

18

116.   The requirements set forth in KRS 286.8-270 are all-encompassing and do not establish limitations related to loan origination, processing, funding or servicing. Accordingly, a mortgage lender owes such duties to its borrowers in all phases of the mortgage loan process through out the life of the loan. Such duties are required of any and all of the mortgage lenders agents, officers, employees, or other persons or entities acting within the scope of the authority held by the mortgage lender related to its duties to the borrower related to his mortgage(s).

117.   Defendants CHL, AWL, and MERS violated the mortgage contracts with the Plaintiff when they falsely and fraudulently inflated charges to the Plaintiff's escrow accounts, falsely and fraudulently demanded payment for those erroneous charges, refused to correct the fraudulent charges after they were requested to do so, and then falsely initiated foreclosure proceedings against the plaintiff's mortgages based upon such false and fraudulent charges.

118.   Defendants, and each of them, thereafter have withheld documents, evidence, and other material facts related to Plaintiff's loans which have severely and detrimentally affected his rights, interests, and benefits related to such mortgage loans, and where such material facts have been wrongfully withheld, Plaintiff has been denied his due process rights to protect his money and property or to otherwise receive the full benefits entitled to him under his mortgages and the provisions of KRS 286.8-270.

119.   Defendants, and each of them, have interfered with Plaintiff's ability to perform his mortgage contract by demanding sums from Plaintiff that were not actually or lawfully due, by refusing to comply with the terms and conditions of the mortgage contracts, and by refusing to comply with laws and regulations that govern such mortgage contracts in this judicial district. Defendants have further interfered with Plaintiff's ability to perform his mortgage contract by initiating and maintaining foreclosure lawsuits against the Plaintiff which were brought in bad faith, which are being maintained in bad faith and in violation of law, and which the named plaintiff in those actions has no lawful interest or legal capacity with respect to such mortgages.

120.   As a result of the foregoing, incorporating by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein, the Defendants, and each of them, are liable for the aforesaid acts of bad faith, interference, and the breach of the covenant of good

1  faith and fair dealing in an amount to be determined as compensatory and punitive damages for the

2  Plaintiff.

3  **COUNT 9:  VIOLATION OF THE FAIR CREDIT REPORTING ACT**

4      121.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent

5  paragraphs of the Complaint as if fully set forth herein.

6      122.   At some  time within the 12 month period immediately prior to Plaintiff's mortgages

7  being issued by the Defendants, TransUnion reported the plaintiff's credit score at 816.

8      123.   Plaintiff is informed and believes that one or more of the defendants caused Plaintiff's

9  credit report to be obtained in 2004 as part of the loan processing related to Plaintiff's mortgages.

10     124.   Plaintiff is informed and believes that the credit report obtained by one or more of the

11  Defendants in 2004 listed Plaintiff's FICA score as 684, and that such credit report was void of any

12  negative credit against the Plaintiff.

13     125.   Plaintiff is informed and believes that his credit score during the time his mortgage loans

14  were being processed by the Defendants was sufficient to allow him to obtain "A" credit loans, including

15  mortgage loans, consumer loans, auto loans, commercial loans, and other services for which credit is

16  a factor, such as homeowner insurance, commercial insurance, auto insurance, bonding, etc.

17     126.   On or about August, 2005, one or more of the defendants reported negative credit against

18  the Plaintiff which included that he had made late payments by 30 days or more on one or more of his

19  mortgages. The negative credit reporting was made to the three major credit reporting agencies.

20     127.   On or about late August 2005, Plaintiff contacted CHL to inform them that they had made

21  an error on their credit reporting of Plaintiff and requested that it immediately be corrected. A loan

22  service representative for CHL indicated that CHL had made an error by not properly crediting Plaintiff's

23  loan payment, that two of Plaintiff's loans showed the payments were past due, and that Plaintiff owed

24  late payment penalties.

25     128.   Defendant CHL then refused to correct the error unless and until Plaintiff produced proof

26  that his payments had in fact been made. Plaintiff produced his cancelled checks which proved beyond

27  any doubt that his payments had been made.

28

129.   Thereafter, and upon receipt of Plaintiff's cancelled checks, CHL told Plaintiff that it would correct the incorrect negative reporting against his credit, correct the loan status, and issue a written statement indicating that he had no negative credit or late payments on his mortgages.

130.   On or about October, 2005, CHL issued a letter to Plaintiff stating that Plaintiff had no negative credit and that his loans had not been paid late at any time from their inception.

131.   Defendant CHL thereafter failed to correct the negative credit reported against the Plaintiff, and continued to report that he was making late payments.

132.   The conduct of CHL was at the very least negligent up to the time it was notified by the Plaintiff of such improper reporting. Thereafter, once it was placed on notice of the improper credit reporting, and once it agreed to correct the mistake, any further negative credit reporting and/or any failure to correct the known credit reporting errors, CHL, AWL and MERS was in strict violation of 15 USC §1681n and 15 USC §1681o.

133.   By the Defendants' own negligence, including CHL, AWL and MERS, the incorrect reporting of negative credit against the Plaintiff was in violation of 15 USC §1681e.

134.   As a result of the Defendants' improper credit reporting against the Plaintiff, and then the Defendants' subsequent failure to correct such improper credit reporting, Plaintiff suffered both the denial of credit and/or additional expense where   mortgage loans, consumer loans, auto loans, commercial loans, and other services for which credit is a factor, such as homeowner insurance, commercial insurance, auto insurance, or bonding, was sought.

135.   As a result of the foregoing, incorporating by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein, the Defendants, including CHL, AWL and MERS, are liable for the aforesaid acts of negligence and violation of the Fair Credit Reporting Act in an amount to be determined as compensatory and punitive damages for the Plaintiff.

**COUNT 10:  CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)**

136.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

137.   Defendants Andrew Beshear and Jonathon Pitchford are and were at all times mentioned herein, acting within the scope and authority granted them by a regulation of the State of Kentucky

1 which authorizes them to practice law in the Kentucky Courts, and which makes them Officers of the
2 Court, including the McCracken Circuit Court of McCracken County Kentucky.

3     138.    Beshear and Pitchford are "persons" as that term is used in the text of 42 U.S.C. § 1983.

4     139.    Under color or Kentucky regulation and by use of the authority granted thereunder to
5 Beshear and Pitchford, and in violation of 42 USC § 1985(3) by all defendants, Beshear, Pitchford, CHL,
6 AWL and MERS (through their respective officers, agents and/or employees) entered into express and/or
7 implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff
8 of his constitutional rights by filing false matters, failing to provide discovery, withholding material
9 facts, obstructing justice, maintaining a secret relationship with the presiding judge, and interfering with
10 Plaintiff's meaningful access to the court, all of which such conduct is prohibited by Kentucky Revised
11 Statutes, and/or Kentucky Rules of Civil Procedure, and/or Kentucky Rules of Professional Conduct.

12     140.    The Defendants, and each of them, willfully participated in this illegal objective by
13 various means, with the intent to further some purpose of the conspiracy, including for example:

14     a.    Filing false and inflammatory statements about the Plaintiff;

15     b.    Failing to turn over documents and material facts that would prove Plaintiffs allegations;

16     c.    abusing the discovery process to harass and intimidate the Plaintiff;

17     d.    agreeing to use false, altered, or forged documents to support foreclosure actions
18         against the Plaintiff and his real properties.

19     e.    seeking sanctions against the Plaintiff under false pretenses

20     f.    withholding 3rd party documents to gain an unfair advantage over the Plaintiff;

21     g.    failing to comply with discovery rules promulgated by the Kentucky Supreme Court

22     h.    filing false sworn affidavits with the court to deny certain relief to the Plaintiff

23     i.    withholding information from the Plaintiff to prevent him from learning that the
24         presiding judge had a family member working for the defendant's counsel.

25     141.    The Defendants', and each of them, their actions evidenced a reckless and callous
26 disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

27     142.    As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his
28 rights under the Fourteenth Amendment to the United States Constitution.

143.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of privacy, loss opportunity, loss of status and standing in the business community, and irreparable harm to his income potential.

144.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in a portion of the civil proceedings to protect his property, and incurred expenses associated with defending against the unlawful civil proceedings initiated and sustained by the defendants.

145.    As a result of the foregoing, the Defendants, and each of them, are liable for the aforesaid acts of conspiracy and violation of 42 U.S.C. § 1983 and 42 U.S.C. §1985(3) in an amount to be determined as compensatory and punitive damages for the Plaintiff.

**COUNT 11:  CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(2)  (OBSTRUCTION)**

146.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

147.    Beshear, Pitchford, CHL, AWL, and MERS are "persons" as that term is used in  42 .U.S.C. 1985(2).

148.    Under color of state regulation, and in their capacities as attorneys and officers of the court, Beshear and Pitchford, along with CHL, AWL, and MERS who were acting in their individual capacities, conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice (including Plaintiff's due process rights) in the State of Kentucky, with the intent to deny Plaintiff the equal protection of laws.

149.    Defendants, and each of them, their actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

150.    As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourteenth Amendment to the United States Constitution.

151.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of privacy, loss opportunity, loss of status and standing in the business community, and irreparable harm to his income potential.

152.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in a portion of the civil proceedings to protect his property, and incurred expenses associated with defending against the unlawful civil proceedings initiated and sustained by the defendants.

153.   As a result of the foregoing, the Defendants, and each of them, are liable for the aforesaid acts of conspiracy and violation of 42 U.S.C. §1985(2) in an amount to be determined as compensatory and punitive damages for the Plaintiff.

**COUNT 12: DECLARATORY RELIEF**

154.   Plaintiff incorporates by reference the allegations of all the preceding and subsequent paragraphs of the Complaint as if fully set forth herein.

155.   A dispute has arisen between and among Plaintiff and Defendants with regard to the rights, obligations, benefits and duties due or owed under the mortgage/loans herein.

156.   These disputes concern, but are not limited to, use of forged, altered or non-genuine documents by the defendants, no lawful interest held in the mortgages, no lawful capacity to enforce such mortgages, propriety of servicing such mortgage loans, propriety of originating and funding such loans, including compliance with the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Fair Debt Collection Act.

157.   Additionally, there exists a dispute between the Plaintiff and the Defendants as to whether the Defendants have violated the laws of Kentucky in the course of their foreclosure actions initiated and maintained against the Plaintiff in the McCracken County Circuit Court, including violating the Plaintiff's constitutional rights under the U.S. and Kentucky Constitutions.

158.   Plaintiff further alleges that a declaration of rights and duties of the parties herein are essential to determine the actual status and validity of the mortgage loans, the mortgagee, the lender, the loan servicer, and who has lawful authority to initiate foreclosure proceedings.

WHEREFORE, Plaintiff prays for a Declaration by this Court that finds the foreclosure proceedings initiated against the Plaintiff in the McCracken County Circuit Court are invalid and unlawful because the plaintiff in those actions lacks legal capacity to bring the action, that the plaintiff in those actions does not hold a legal interest in the mortgages, that the plaintiff in those actions have

24

1  used forged, altered, or non-genuine documents, and that the mortgage loans violate various federal laws

2  from their origination to the present time.

3  **COUNT 13: INJUNCTIVE RELIEF**

4      159.    Plaintiff incorporates by reference the allegations of all the preceding and subsequent

5  paragraphs of the Complaint as if fully set forth herein.

6      160.    Plaintiff is the owner in fee simple of real property located at 2115 Park Ave., 2914½

7  Benton Road, and 840 Burkhart Lane, all located in Paducah, Kentucky.

8      161.    Defendants CHL, AWL, and MERS claim an interest in the Plaintiff's property, disputing

9  or denying Plaintiff's rights to ownership and contend that their interest or ownership will be with

10  Defendants by means of a judicial foreclosure of the mortgages identified in ¶ 8 herein.

11      162.    Plaintiff alleges that Defendants CHL, AWL, and MERS have no such right, title or

12  interest in Plaintiff's real property because the foreclosure suit initiated against the Plaintiff's properties

13  is based upon fraud, in violation of Kentucky State Laws, in violation of federal laws, and has been

14  maintained in a manner that violates Kentucky State laws and the Plaintiff's constitutional rights.

15      163.    Plaintiff further alleges that CHL is the plaintiff in those foreclosure actions, and that

16  CHL does not hold an interest in the Plaintiff's mortgages, CHL does not have legal capacity to initiate

17  or maintain a suit upon those mortgages, and that none of the defendants hold or will produce original

18  or genuine documents to support such foreclosure actions.

19      164.    Defendants, and each of them, have wrongly interfered with, and continue to interfere

20  with Plaintiff's use and ownership of his properties by continued attempt to foreclose by judicial force

21  and dispossess Plaintiff from his properties.

22      165.    Defendants' attempts and threats to dispossess the Plaintiff from his properties will

23  continue unless and until enjoined or restrained by this Honorable Court.

24      166.    Failure to enjoin or restrain Defendants will cause Plaintiff grave and irreparable harm

25  as he will be deprived of his constitutional rights, deprived of his unique property, and deprived of his

26  ability to own real property due to the damage Defendants have inflicted upon Plaintiff's credit

27  worthiness and income.

28

167. Plaintiff has no adequate remedy of law to force the Defendants to comply with Kentucky law and the U.S. Constitution and/or to cease with their fraudulent foreclosure action against the Plaintiff's properties.

168. Plaintiff alleges that the judicial foreclosures initiated and maintained by CHL in action no. 05-CI-305 in the McCracken County Circuit Court, in conjunction with Defendants' fraud, conspiracy and violation of law, is of such a nature and character to transfer title of Plaintiff's properties to defendant CHL.

**WHEREFORE**, as to the **Thirteenth** Cause of Action, Plaintiff respectfully requests this Honorable Court to issue an Order to enjoin and restrain the Defendants from maintaining the foreclosure actions against the Plaintiff in case no. 06-CI-305 in the McCracken County Circuit Court, to restrain the Defendants from further violating the Plaintiff's Constitutional Rights under the Fourteenth Amendment, and restraining the Defendants from any further violation of the federal Truth in Lending Act, federal Real Estate Settlement Act, federal Fair Debt Collection Act, and the federal Fair Credit Reporting Act.

As to the **First** through the **Twelfth** Causes of Actions, Plaintiff prays for relief against the Defendants as follows:

1. Compensatory damages in an amount sufficient to compensate the Plaintiff for the actual damages incurred by him as a result of the acts and omissions of the Defendants;

2. Statutory damages to the extent allowed by law for the Plaintiff for the acts and omissions of the Defendants;

3. Consequential damages to the extent allowed by law for the Plaintiff for the acts and omissions of the Defendants;

4. Under the Kentucky Consumer Protection Act, the Kentucky Mortgage Loan Practices Act, and other applicable Kentucky Revised Statutes, damages as allowed by those statutes, including punitive or exemplary damages, double or treble damages, penalties, attorneys fees, and expenses of litigation;

5. Prejudgment interest at the maximum legal rate;

6. Punitive or exemplary damages for the willful, intentional, malicious, and/or reckless

1    actions of the Defendants in the amount of Five Million Dollars ($5,000,000);

2       7.    Reasonable attorneys fees and expenses of litigation as allowed by all applicable laws;

3       8.    A declaration that the Defendants violated federal Truth in Lending laws, federal Real

4    Estate Settlement laws, federal Fair Debt Collection laws, and federal Fair Credit Reporting laws  against

5    the Plaintiff;

6       9.    A declaration that the Defendants violated the Plaintiff's constitutional rights afforded

7    him under the U.S. Constitution;

8      10.    A declaration that the Loan Servicing Practices of Countrywide Home Loans is illegal

9    and an injunction against all Defendants preventing them from perpetrating such acts in the future;

10     11.    Reasonable compensation to the Plaintiff for his time and expenses in preparing, filing

11    and maintaining this action without an attorney at the hourly rate of $100 per hour, plus expenses of

12    litigation .

13     12.    An order requiring the CHL, AWL and MERS to correct the accounts of the Plaintiff;

14     13.    A trial by a jury of 12 persons; and

15     14.    Such other and further relief as the Court deems just and appropriate.

16

17                 Respectfully submitted,

18

19

20               Dennis Bell
                    2934 Benton Road
                    Paducah, Ky. 42003

21               (270) 556-1571

22

23

24

25

26

27

28