UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:08-cv-167-JHM

DENNIS BELL                                                                                          PLAINTIFF

V.

COUNTRYWIDE HOME LOANS, INC., et al.                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Countrywide Home Loan's ("CHL") motion to abstain or dismiss pursuant to the doctrine announced in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendant's motion is **GRANTED**.

**I. FACTS**

In 2004, Plaintiff Dennis Bell ("Bell") executed three mortgages with CHL d/b/a America's Wholesale Lender. At various times in 2006, CHL instituted foreclosure actions in the McCracken County Circuit Court against Bell's properties at 2115 Park Avenue (March 24), 840 Burkhart Lane (July 31), and 2914 Benton Road (August 23), Paducah, KY. The foreclosures were consolidated into a single action in October 2006.

On April 11, 2006, Bell filed a counterclaim against CHL in the First Foreclosure Action, alleging that CHL mismanaged the escrow account, refused to cease acting as his escrow holder, and engaged in negative credit reporting based on his failure to pay what he believed was an inflated amount. On May 19, 2006, Bell secured a default judgment against

CHL in the amount of $556,889.75. CHL moved to vacate the judgment, however, because it was not properly served and because CHL served and filed a timely reply to the counterclaim. The McCracken Circuit Court set a hearing on that motion for August 15, 2006. On the day prior to the hearing, Bell attempted to remove the First Foreclosure Action. This Court remanded the cause as untimely. Thereafter, the McCracken Circuit Court vacated the default judgment.

CHL argues that Bell has engaged in questionable litigation tactics in state court. Among other things, CHL observes that Bell filed numerous frivolous motions; was sanctioned by the McCracken Circuit Court for the unauthorized practice of law; deliberately gave false responses to written discovery requests; and engaged in at least eleven instances of perjury during his deposition testimony. Bell, for his part, contends that the state court proceeding has been "corrupted" because Judge Clymer's daughter-in-law is employed with CHL's local counsel's firm. He has brought the instant action against CHL, its counsel, and two additional defendants, seeking to "enjoin" the state court proceeding.

## II. DISCUSSION

CHL argues that the Court should abstain from hearing the case under the doctrine announced by the Supreme Court in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Under the so-called Colorado River abstention doctrine, federal courts have a "narrow exception" to their "virtually unflagging obligation . . . to exercise the jurisdiction given them" where there is (1) "parallel" litigation pending in state court, and (2) the proposed litigation in federal court would be duplicative or unwise. Id. at 817-818; Bates

v. Van Buren Tp., 122 Fed. Appx. 803, 806 (6th Cir. 2004); Gottfried v. Med. Planning Servs., Inc., 142 F.3d 326, 329 (6th Cir. 1998). The Court considers whether the doctrine applies here below.

    A. Parallel Litigation

The threshold question in the Colorado River abstention analysis is whether there are parallel proceedings in state court. Crawley v. Hamilton County Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984). To be "parallel" the proceedings have to be "substantially similar." Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998). This means that neither the issues nor the parties have to be identical. Heitmanis v. Austin, 899 F.2d 521, 528 (6th Cir. 1990). Accordingly, "[t]he argument that abstention is inappropriate because the federal cause of action included parties not present in the state proceedings 'is not relevant to Colorado River abstention.'" Romine, 160 F.3d at 340 (quoting Heitmanis, 899 F.2d at 528).

Bell argues that the proceedings are not parallel here because "[t]he parties are different, several of the causes of action include violations of federal law and constitutional violations which cannot be determined in state court, and of great importance, the issue of Countrywide's capacity in the state court action could completely dispose of that case." (Plaintiff's Response, p. 7). He also contends that "[t]he federal case for the most part alleges facts that post-date the filing of the state court actions because many of the allegations identify conduct of the defendants that occurred during the time the state court action was pending." (Id. at 6). The Court disagrees.

The proceeding here is unquestionably parallel with the state court proceeding. For

3

one thing, the parties are substantially the same. Bell's complaint, just as his counterclaim in state court, is essentially against CHL. Although Bell has also named CHL's attorneys as defendants in this action based on their alleged conduct as counsel in the state court proceeding, that dispute is also already at issue in state court, i.e., Bell filed and lost a motion for sanctions based on the attorneys' conduct. (DN 4, Ex. 15.). Further, although Bell purports to assert claims directly against Mortgage Electronic Registration Services, Inc. and America's Wholesale Lender, Inc. for the first time here, his argument that these entities are the "real parties in interest" is also already at issue in the state court action. (DN 4, Ex. 19, at 3.).

More importantly, the claims and issues asserted by Bell against CHL in this action are virtually identical to those already at issue in the foreclosure action: the complaint relates to the same three mortgages on the same three properties at issue in state court. (Bell's Complaint ¶ 8.). Indeed, the gravamen of Bell's federal complaint, just as in his state court counterclaim, is that he allegedly requested that "escrow accounts be established solely for his benefit"; that CHL demanded "inflated escrow payments"; and that when he "refused to pay" and "withdrew his authorization" for CHL to maintain his escrow, CHL "refused to cease demanding payments" and negatively affected his credit rating. (Bell's Complaint ¶¶ 11, 16, 25-29,134; Bell's Counterclaim ¶¶ 15-37).

Bell's attempt to distinguish the instant action by adding different defendants and recasting his claims using additional legal theories is unavailing. See Romine, 160 F.3d at 340; see also Crown Enterprises, Inc. v. Lambert, No. 06-CV-13206, 2006 WL 2844445, *2

(E.D. Mich. Sept. 29, 2006) ("that plaintiff attempts to sue additional parties or advance different legal theories to obtain a remedy does not warrant a contrary conclusion"). The fact of the matter is that Bell's claims here are substantially the same as those in his state court counterclaim. Accordingly, the Court finds that the proceedings are parallel for purposes of Colorado River abstention.[1]

B. The Other Colorado River Factors

The second step of the Colorado River analysis requires the Court to consider the interests of judicial economy and federal-state comity as embodied in the following factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained . . .; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction.

Romine, 160 F.3d at 340-41.5

According to the Sixth Circuit, these factors necessitate "'a careful balancing as they apply in a given case' depending on the particular facts at hand." Id. (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Group, 460 U.S. 1 (1983). The Court finds that factors one, three, four, five, six, and seven favor abstention here.

---

[1] Bell cites two cases in support of his argument that Colorado River abstention is inappropriate. However, since both of those cases clearly have no bearing here, the Court declines to address them in any detail. See Allegheny v. Washuda, 360 U.S. 185 (1959) (decided before Colorado River on vastly different facts); Houston v. Hill, 482 U.S. 451 (1987) (declining to apply Pullman abstention doctrine and mentioning Colorado River in passing).

1. State Court's Jurisdiction over the Property

The first factor weighs heavily in favor of abstention because the instant case involves property over which the state court has already assumed jurisdiction. Specifically, in the state action, CHL is seeking the in rem remedy of mortgage foreclosure upon Bell's property. See Johnson v. United States, No. 91-6194, 1992 U.S. App. LEXIS 34840, *4 (6th Cir. Dec. 19, 1992) (foreclosure is "an in rem proceeding"). Obviously, in this case, the very same property is at issue because Bell seeks to "enjoin" the foreclosure of those properties. (Bell's Complaint ¶¶ 159-168); cf. Hunt v. Mortgage Electronic Registration, 522 F. Supp. 2d 749, 753-54 (D.S.C. 2007) (in federal suit by borrower against mortgagee and foreclosing attorneys alleging improper foreclosure in earlier state court matter, abstention warranted because state court had already assumed jurisdiction over the house, and because federal case was a "defensive, contrived reaction to [borrower's] frustration with her state court proceedings").

2. Order of Jurisdiction, Piecemeal Litigation, and Relative Progress

Abstention is also warranted by the order in which jurisdiction was obtained, the policy of avoiding piecemeal litigation, and the relative progress of the proceedings. Here, it is quite clear that the state proceedings were filed well before, and are far more advanced than, the newly-filed federal case. Bell and CHL have been litigating the same issues raised in his complaint for over two years; significant discovery has occurred; and dispositive motions are now pending. (DN 4, Ex. 31). Thus, if Bell is permitted to prosecute his complaint here there will be substantial duplication of effort by both the courts and the

parties. (DN 4, Ex. 5.); Romine, 160 F.3d at 341; cf. PaineWebber, Inc. v. Cohen, 276 F.3d 197, 207-08 (6th Cir. 2001) (finding that two-day delay between the filing of state and federal suits was not a sufficient reason for abstention where there was no significant progress in the former suit).

### 3. Source of Governing Law

Abstention is also warranted here because the issues raised in Bell's complaint largely sound in state law. Seven of Bell's thirteen causes of action explicitly invoke state law. (Bell's Complaint, Count 2; Count 5; Count 6; Count 7; Count 8; Count 12; Count 13). Two of his alleged federal counts (Count 10; Count 11) are irrelevant to the Colorado River abstention analysis because they are facially defective. See Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998) (Section 1983 claim requires allegation that defendant acted under color of state law). And last but not least, his four remaining federal counts (Count 1; Count 3; Count 4; Count 9) are either at issue in the state proceeding already or likely have been waived by his failure to assert them there as compulsory counterclaims.

### 4. Adequacy of the State Court Action

Bell argues that the state action is inadequate to protect his rights because CHL "corrupted" the state court proceeding, resulting in Judge Clymer's disqualification. However, notwithstanding this allegation, the Court has found no evidence in the record to support Bell's claim. It is undisputed that Judge Clymer, sua sponte, advised Bell that his daughter-in-law worked for CHL's local counsel's law firm. It is further undisputed that after being advised of this connection, Bell wrote a letter to Judge Clymer stating that he did

7

not view that relationship as a reason for recusal and would not seek to have the judge removed from the case. [DN 23, Ex. 1). In light of these facts, the Court cannot credit Bell's allegation that Judge Clymer recused himself because of some impropriety stemming from that relationship. Rather, the Court is inclined to accept Defendant's suggestion that "Bell's recusal motion was granted – in all likelihood out of an abundance of caution – because Judge Clymer had referred to Mr. Bell as a 'baldfaced liar' after a long sanctions hearing in which Mr. Bell, in fact, lied about his litigation history and credit score." (Defendant's Response, p. 3 n.5).

Accordingly, the Court finds that the Colorado River factors heavily favor abstention.[2]

---

[2] Even had the balance been closer, however, the Court would hesitate to allow this parallel proceeding given that this is Bell's second attempt to gain a federal forum while significant motions are pending against him in the state action. See Preston v. Eriksen, 106 F.3d 401 (Table), 1997 WL 14418, *4 n.3 (6th Cir. 1997) (court may consider for purposes of Colorado River abstention an "obvious attempt to shop for a more receptive forum after . . . years of unsuccessful litigation in the state courts"); Romine, 160 F.3d at 341 ("The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship . . .").

## III. CONCLUSION

**IT IS ORDERED** that the above-captioned matter is **STAYED** pending resolution of the parallel state court proceedings.

**IT IS FURTHER ORDERED** that for administrative purposes this case is **CLOSED**.  Upon the completion of the state court action, the parties shall notify the Court.


cc. Counsel of Record